IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**FIRST MEDICAL HEALTH PLAN, INC.**

   **Plaintiff,**

   v.                                                Civil Action No. 09-1009 (GAG)

**CAREMARKPCS CARIBBEAN, INC.;**
**INSURANCE COMPANY XYZ**

   **Defendants.**

## OPINION AND ORDER

Plaintiff in this matter, First Medical Health Plan, Inc. ("First Medical" or "Plaintiff"), commenced this action to recover monies which it contends are owed to it by defendant CaremarkPCS Caribbean, Inc. ("Caremark or Defendant") for an alleged breach of contract committed by Caremark. Plaintiff properly brings its claim in federal court pursuant to 28 U.S.C. § 1332(a)(2) as there is complete diversity among the parties and the requested recovery meets the amount in controversy requirement. In its complaint, Plaintiff pleads (6) six causes of action resulting from Caremark's alleged failure to comply with the terms of the contract entered into by the two parties: (1) breach of contract with respect to the audit and the (2) rebates; (3) reformation and restitution; (4) recision and restitution; (5) unjust enrichment; and (6) a prayer for attorneys' fees and costs.

Presently before the court is the defendant's motion to dismiss (Docket No. 45) Plaintiff's amended complaint (Docket No. 31). Plaintiff filed a timely opposition (Docket No. 48) which Defendant answered through its reply brief (Docket No. 53). After reviewing the pleadings and pertinent law, the court **GRANTS** in part and **DENIES** in part Caremark's motion to dismiss (Docket No. 45).

**Civil No. 09-1009 (GAG)**                                                          2

## I.  Standard of Review

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. Id. at 1949-50 (citing Twombly, 550 U.S. at 555-56). In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. Iqbal 129 S. Ct. at 1950.

## II.  Relevant Factual & Procedural Background

On or around March 1, 2005, First Medical entered into a Managed Pharmacy Benefit Services Agreement ("MPBS Agreement") with AdvancePCS Puerto Rico, Inc., now known as Caremark. In accordance with the agreement, Caremark provided certain prescription benefit management services to First Medical in exchange for an agreed upon payment for these services. One of the services provided by Caremark, as described in Section 1.4(a), was to process claims

**Civil No. 09-1009 (GAG)** 3

submitted by pharmacies for payment under First Medical's insurance plan in accordance with the parameters of First Medical's drug benefit plan.[1] Plaintiff alleges that Caremark failed to adhere to the pricing and other requirements of First Medical's Plan Design.

Pursuant to Section 4.4 of the MPBS Agreement, First Medical retained Cerebrus Group & Associates, LLC ("Cerebrus") to inspect and audit Caremark's business records that related to the claims that Caremark had processed on behalf of First Medical during the period of September 1, 2005 through August 31, 2006. On or about December 7, 2007, Cerebrus issued a written report of its findings with respect to the audit. Cereberus found that Caremark had failed to adhere to the pricing structure as required under First Medical's Plan Design, and prescribed in the MPBS Agreement. Cerebrus found, that as a result of Caremark's failure to comply with the pricing structure, Caremark had charged First Medical a total of $2,250,623.00 more than it should have pursuant to First Medical's Plan Design. First Medical informed Caremark of its findings and demanded that it pay the deficiency found in the audit. Caremark refused to refund the money.

Plaintiffs also contend that Caremark has failed to follow the requirements as dictated by

---

[1] Section 1.4(a) of the MBPS Agreement provides in part as follows:

1.4   Claims Processing.

   a.   Provider submitted Point of Sale ("POS") Claims. [Caremark] will adjudicate Claims submitted by Participating Pharmacies to [Caremark] in accordance with the Participating Pharmacy's agreement with [Caremark] and will process such claims as described below.

   (i)   [Caremark] will enter into its electronic on-line Claims adjudication system certain Plan Design information necessary for [Caremark] to perform automated Claims processing services in accordance with this Agreement, including information regarding deductibles, copays, Plan Participant or Customer out-of-pocket maximums, benefit maximums and other features of the Plan Design to be used in processing Claims.

See Docket No. 17-2 at 1.

**Civil No. 09-1009 (GAG)**                                                                 4

Section 1.9(d) of the MPBS Agreement.[2]  Exhibit B of the MPBS Agreement states, among other things, that Caremark may retain 50% percent of the rebates[3] collected by it on behalf of First Medical.  Plaintiff alleges that between 2005 and 2007 Caremark failed to remit any rebates to First Medical.  During this period, Caremark alledgedly collected approximately $1,870,598.00 in rebates, which First Medical claims are due to it pursuant to the MPBS Agreement.

Finally, First Medical claims that during negotiation of the terms and provisions of the MPBS Agreement, it was reasonably understood by First Medical that Caremark's actual costs to carry out their services included a dispensing fee of $3.00 per claim, which was paid to the pharmacies in its network.  Relying upon this, First Medical claims that it stipulated in the contract that it would pay a $3.00 dispensing fee to Caremark to reimburse them for the actual dispensing fees that Caremark would pay to participating pharmacies.[4]  Contrary to First Medical's understanding of the agreement, Caremark had entered individual contracts with participating

---

[2] Section 1.9(d) of the MPBS Agreement provides in part as follows:

> Payment of rebates.  Subject to the terms and conditions of this agreement, on behalf of [First Medical], [Caremark] will receive the Rebates paid by Manufacturers to [First Medical].  Within sixty days of the beginning of each calendar quarter, [Caremark] will remit to [First Medical] all Rebates received by [Caremark] during the prior calendar quarter, if any, net of the fees retained by [Caremark] pursuant to Section 2 and as set forth in Exhibit B.

See Docket No. 17-2 at 5.

[3] Rebates are defined as "all rebates, reimbursements, or other discounts received under a pharmaceutical manufacturer's discount program with respect to pharmaceutical products dispensed to a Plan Participant under the Plan Design for such a period." (See Docket No. 17-2 at 20.)

[4] The contract stated in pertinent part that, "As consideration for the services selected by [First Medical] in accordance with the [MBPS] Agreement, [First Medical] will pay to [Caremark] the fees set forth below: . . . Brand name Drugs: AWP 12% plus a $3.00 dispensing fee.  Generic drugs: MAC + $3.00 dispensing fee." (See Docket No. 17-2 at 25.)

**Civil No. 09-1009 (GAG)**                                5

pharmacies which required Caremark to pay dispensing fees ranging from only $2.00- $3.00 per claim.  Therefore, for each claim processed by Caremark, Caremark would pay the pharmacies a dispensing fee ranging from $2.00 - $3.00 per claim and would then charge First Medical $3.00 for the same.  First Medical contends that this arrangement was contrary to its assumption that the $3.00 dispensing fee represented only a reimbursement and was not intended to provide Caremark with a profit.  Plaintiff contends that had it been aware of this it would have never agreed to the $3.00 dispensing fee as it appears in exhibit B of the MPBS Agreement.

Over the life of the contract, First Medical has provided no less than 8,645,377 $3.00 dispensing fees pursuant to the MPBS Agreement.  The amount paid by First Medical for these dispensing fees is no less than $4,322,688.00 in excess of the total amount that Caremark remitted to pharmacies as dispensing fees under its own individual contracts.

### III.   Discussion

Section 9.7 of the MPBS Agreement provides that the "Agreement must be covered by and construed in accordance with the laws of the State of Arizona." (See Docket No. 17-2 at 17.)  Thus, any issues of substantive law will be settled by applying legal precedent binding upon the state of Arizona. More so, the parties are in agreement that Arizona law controls the contract.

#### A.     **Breach of Contract Claims**

To properly assert a claim for breach of contract, a party must sufficiently allege (1) a valid contract, (2) breach of that contract, and (3) resulting damages.  See Clark v. Compania Ganadera de Cananea, S.A., 387 P.2d 235, 238 (Ariz. 1963).  In its motion to dismiss, Caremark alleges that First Medical's breach of contract claim must fail as it has failed to plead precisely how the contract, or any terms contained therein, were breached.  (See Docket No. 45 at 5.)  In making this assertion, Caremark relies upon the decision in Instituto de Educacion Universal v. Great Lakes Higher Educ. Corp., No. 98-1300, 2001 WL 1636686 (D. P. R. Sep 28, 2001) to demonstrate the legal deficiencies in First Medical's breach of contract claim.  In Instituto de Educacion, the plaintiff alleged that the defendant, Sallie Mae, had breached a contract by denying students loans to which they were entitled to as students attending an eligible institution. 2001 WL 1636686 at *1.  However, as First Medical

**Civil No. 09-1009 (GAG)**                                    6

correctly points out in its opposition, the courts decision to dismiss the claim in <u>Instituto de Educacion</u> was based on the fact that plaintiff "ma[d]e no allegation that any contract ever existed between Sallie Mae and IEU, nor that Sallie Mae breached any provisions of any contract with IEU." Id. at *2.

The circumstances here are much different then those presented in the case cited by the defendant. The MPBS Agreement has been provided to the court, thus there is no question as to whether or not a contract exists between these two parties. (<u>See</u> Docket No. 17-2.) Furthermore, First Medical has sufficiently alleged that Caremark did not follow the contracted payment terms which were specifically delineated in the MPBS Agreement. The complaint states that Cerebrus determined that Caremark failed to adhere to the pricing structure required under First Medical's Plan Design and, as a result, charged First Medical a total of $2,250,623.00 more than it should have. Thus, Caremark's contention that First Medical has failed to set forth any contractual duty that Caremark has breached, is clearly contravened by the pleadings.

Furthermore, Caremark's motion to dismiss does not touch upon First Medical's second count for breach of contract with regard to the Rebates. Regardless of this oversight, the court finds that First Medical has sufficiently alleged the necessary components of a breach of contract claim with regard to Caremark's failure to remit payment under the Rebate clause. First Medical has provided the exact clause of the contract requiring Caremark to remit 50% of the Rebates it collects on behalf of First Medical, and has clearly identified the damages which have occurred as a result of this alleged breach.

Therefore, the court **DENIES** Caremark's motion to dismiss with respect to Plaintiff's claims for breach of contract.

**B.     Reformation or Rescission**

In order to obtain reformation the plaintiff must show either that a mistake was mutual or that a unilateral mistake by one party is accompanied by fraud or inequitable conduct by the other. <u>See</u> <u>Korrick v. Tuller</u>, 27 P.2d 529, 530-31 (Ariz. 1933). "A contract may be rescinded on the ground of a mutual mistake as to a 'basic assumption on which both parties made the contract.'" <u>Nelson v.</u>

**Civil No. 09-1009 (GAG)**                                      7

Rice, 12 P.3d 238, 241 (Ariz. Ct. App. 2000) (quoting Renner v. Kehl, 722 P.2d 262, 265 (Ariz. 1986)). "A mutual mistake exists where there has been a meeting of the minds of the parties, and an agreement is actually entered into, but the agreement in its written form does not express what was really intended by the parties." Hill-Shafer Partnership v. Chilson Family Trust, 799 P.2d 810, 814 (Ariz. 1990). A lack of mutual assent differs from a theory of mutual mistake in that to prove a lack of mutual assent a party must demonstrate that either the terms of the agreement, or circumstances surrounding the agreement, were sufficiently ambiguous as to make the party's misunderstanding of the contracted terms reasonable. See Id. at 815-816. However, under either theory, "[i]t is not within the power of [courts] to revise, modify, alter, extend or remake a contract to include terms not agreed upon by the parties." Isaak v. Massachusetts Indem. Life Ins. Co., 623 P.2d 11, 14 (Ariz. 1981).

An agreement may also be reformed or rescinded under the theory of unilateral mistake. Heywood v. Ziol, 372 P.2d 200, 203 (Ariz. 1962). Under a theory of unilateral mistake, if one party is operating under a mistake of fact when it signs an agreement, the agreement is voidable if said mistake was induced by misrepresentations made by the other party. See McMillon v. Town of Flagstaff, 164 P. 318, 319 (Ariz. 1917).

*1. Lack of Mutual Assent*

First Medical posits that the provisions in Exhibit B of the MPBS Agreement concerning the $3.00 dispensing fee do not clearly express the intent and understanding of the parties to the MPBS Agreement at the time it was made. In making this assertion, First Medical claims that this contractual error was the result of a lack of mutual assent, thus negating the requisite contractual intent necessary to form a binding contract between the parties. See Heywood, 372 P.2d at 203 (recognizing that "before there can be a binding contract there must be mutual consent of the parties to the terms thereof"). First Medical contends that it believed that the $3.00 dispensing fee was intended to act as reimbursement for the costs associated with Caremark's provided services and not as a source of profit. Therefore, First Medical pleads that this court rescind that provision of the agreement as there was no mutual assent to its intended purpose.

**Civil No. 09-1009 (GAG)**                                      8

Caremark refutes the reasoning behind this request, highlighting that the language found in the dispensing fee clause of the MPBS Agreement presents no ambiguity. See University Realty & Development Co. v. Omid-Gaf Inc., 508 P.2d 747, 750 (Ariz. Ct. App. 1973) (recognizing, "the mere fact that parties to an instrument disagree as to its meaning does not establish its ambiguity"). The court agrees with Caremark's assertion that the language used in the dispensing clause is not interpretable in the manner which First Medical asserts. See Id. at 750 ("Whether a contract is ambiguous or uncertain is a question of law."). The dispensing fee clause clearly states that First Medical will remit a $3.00 dispensing fee to Caremark for all claims involving both brand name and generic brand drugs and makes no indication that this payment shall act as reimbursement. (See Docket No. 17-2 at 25.) As Caremark indicates, a similar argument was formulated in Chicago District Council of Carpenters Welfare Fund v. Caremark RX, Inc., 2005 WL 991897 (N. D. Ill. 2005). The court in Chicago District, when faced with an identical contractual provision, held that "this provision does not require Defendants to pass through cost savings to Plaintiff. Rather, this *unambiguous* provision obligates Defendants to charge Plaintiff a set price for each drug." 2005 WL 991897 at *4 (emphasis added). Similarly, here there is no ambiguity in the language of the clause nor has First Medical presented circumstances which would the lead the court to find that First Medical's alleged misconstruction of this term was reasonable. See Hartford v. Industrial Com'n of Arizona, 870 P.2d 1202, 1208 (Ariz. Ct. App. 1994) (recognizing that "[t]he misunderstandings of the parties must be reasonable before a court may properly find a lack of mutual assent."). Therefore, the court finds the doctrine of "lack of mutual assent" inapplicable in this case. For the court to rescind or reform the contracted-for dispensing clause, it would have to have been the product of either a mutual or unilateral mistake.

    *2.  Mutual Mistake*

First Medical avers that the clause, as written, is the product of a mutual mistake and thus must either be rescinded or reformed to meet the contracting parties' intentions. Caremark adamantly denies this assertion. In support of its argument, Caremark contends that it could not have been mistaken as to the dispensing fee that it had contracted to charge First Medical because at the

**Civil No. 09-1009 (GAG)**                                     9

time of negotiation of the MPBS Agreement, Caremark was already aware of the separate and varying costs that it had negotiated and had in place with the various retail pharmacy suppliers. Therefore, during negotiations, Caremark knew that the $3.00 fee did not represent a reimbursement, but was instead a negotiated-for fee that was a part of First Medical's contractual obligations. With such knowledge, Caremark could not have been mistaken as to its true intention when considered against the clear language which is provided in the dispensing fee clause. See Home Owners' Loan Corp. v. The Bank of Arizona, 94 P.2d 437, 440 (Ariz. 1939) ("Where mistake alone is relied on as a ground for the reformation of an instrument, the mistake must be a mutual mistake. It must appear that by reason of the mistake both have done what neither intended."). Thus, First Medical has failed to demonstrate a mutual mistake with regard to the intentions of both parties. See Isaak, 623 P.2d at 14 (rejecting theory of mutual mistake because the mistake as to the interpretation of the contract was "peculiar" to only one party); see also U.S. Fire Ins. v. Gentile, 712 P.2d 436, 440 (Ariz Ct. App. 1985) (mutual mistake could not be shown where evidence showed the parties intended two different meanings).

                3.      *Unilateral Mistake*

First Medical also contends that the court should either reform or rescind the dispensing fee clause based upon its own unilateral mistake, claiming it misinterpreted the clause during the construction of the contract. "In the absence of mutual mistake, to reform an instrument because of the unilateral mistake of one party, there must be fraud or inequitable conduct by the other party." Id. at 14. Under the theory of unilateral mistake, First Medical must demonstrate that its mistake was the product of some fraudulent act or inequitable conduct by Caremark. See Korrick, 27 P.2d at 531 (recognizing that "[t]he general rule is that fraud must be pleaded and proved in this kind of action") (internal citations omitted); see also Jeffries v. First Federal Sav. & Loan Ass'n of Phoenix, 489 P.2d 1209, 1212 (Ariz. Ct. App. 1971).

In its amended complaint, First Medical contends that "Caremark knew that, at the time the parties executed the MPBS Agreement, First Medical reasonably believed that the agreed-upon dispensing fee was direct reimbursement for the dispensing fee that Caremark would incur with

**Civil No. 09-1009 (GAG)**                              10

respect to First Medical's drug benefit plan." (Docket No. 31 at 9.) This allegation by First Medical is the only factual pleading that demonstrates Caremark's alleged fraudulent or inequitable conduct. In analyzing First Medical's allegations under the Iqbal standard, this assertion only provides a "[t]hreadbare recital[] of the elements of a cause of action, supported by [the] mere conclusory statement[][:'they knew what we were thinking when we signed the contract.']" See Ashcroft, --- U.S. ---, 129 S.Ct. at 1949. This statement alone is insufficient to satisfy this pleading requirement, let alone the heightened pleading standard necessary to demonstrate fraudulent activity under the Federal Rules of Civil Procedure Rule 9(b). See 61A Am. Jur. 2d Pleading § 205 (2009) ("Factual allegations which are conclusory or vague or both and which do not state with any degree of particularity the time, place, circumstances, or content of alleged misrepresentations fail to satisfy the requirements of FR Civ P, Rule 9(b).").

Therefore, the court **GRANTS** Caremark's motion to dismiss with respect to First Medical's claims for reformation or rescission and **DISMISSES** Plaintiff's claim with prejudice.[5]

### C.   Unjust Enrichment

According to Arizona law, "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." Brooks v. Valley Nat. Bank, 548 P.2d 1166, 1171 (Ariz. 1976). As the court has found that there was a valid binding contract with respect to the dispensing fees, First Medical is unable to allege the elements of a claim for unjust enrichment. Therefore, the court **GRANTS** Caremark's motion to dismiss Plaintiff's unjust enrichment claim.

### D.   Claim for Attorney's Fees

First Medical's claim for attorney's fees, pursuant to the contract, is a valid demand and

---

[5] In its opposition, First Medical requested that if the court was going to dismiss any claims for pleading deficiencies, that it dismiss the claims without prejudice. However, as First Medical has already amended its complaint once to address deficiencies in its pleadings (Docket No. 31), the court finds that further amendment of the dismissed claims would still fail to offer sufficient allegations to bring successful claims.

**Civil No. 09-1009 (GAG)**                                11

therefore the court **DENIES** Caremark's motion to dismiss this claim. See 1 Attorneys' Fees § 9:34 (3d ed. 2009) (citing Stockman v. Downs, 573 So. 2d 835 (Fla. 1991) (claim for attorney's fees under contract must generally be pled to be recovered); T.E.D., Bearing Co. v. Walter E. Heller & Co., 112 Cal. Rptr. 910 (Cal. Ct. App. 1974) (where attorney's fees allowable by virtue of contract they must be alleged and demanded in complaint)).

### IV.     Conclusion

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part defendant Caremark's Motion to Dismiss. (Docket No. 45). First Medical's breach of contract claims survive defendant's motion to dismiss. However, the court dismisses, with prejudice, First Medical's claims for reformation and rescission of the dispensing fee clause as well as its alternative claim of unjust enrichment.

**SO ORDERED**

In San Juan, Puerto Rico this 25th day of January, 2010.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge